UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
JENNY R-F,

                       Plaintiff,        <u>DECISION AND ORDER</u>
                                             1:25-CV-00198-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
--------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In May of 2022, Plaintiff Jenny R-F[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Olinsky Law Group, Howard David Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

This case was referred to the undersigned on December 10, 2025. Presently pending are the parties' competing requests for judgment on the pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure.

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

For the following reasons, Plaintiff's request is due to be denied, the Commissioner's request is due to be granted, and this case is dismissed.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for benefits on May 17, 2022, alleging disability beginning October 29, 2021. (T at 62).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on March 7, 2024, before ALJ Kieran McCormack. (T at 30-60). Plaintiff appeared with an attorney and testified. (T at 41-42, 43-53). During the hearing, Plaintiff amended her alleged onset date to February 24, 2022. (T at 39). The ALJ also received testimony from Joseph Atkinson, a vocational expert. (T at 42-43, 53-58).

### B. ALJ's Decision

On March 21, 2024, the ALJ issued a decision denying the application for benefits. (T at 7-24).  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2027, and had not engaged in substantial gainful activity since February 24, 2022 (the amended alleged onset date). (T at 12).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12.

The ALJ concluded that Plaintiff's epilepsy was a severe impairment as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 15).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: no more than occasional traversing of ladders, ropes, or scaffolds; no more than frequent traversing of ramps and stairs; no operation of motor vehicles, power tools, airplane doors, or heavy machinery; and no moderate exposure to workplace hazards such as unprotected heights, unprotected machinery, and/or machinery with moving mechanical parts. (T at 15).

The ALJ concluded that Plaintiff could not perform her past relevant work as an airline flight attendant. (T at 18).

However, considering Plaintiff's age (54 on the amended alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (T at 19).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between October 29, 2021 (the original alleged onset date) and March 21, 2024 (the date of his decision). (T at 20).

On November 22, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

## C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 9, 2025 (Docket No. 1).  On July 11, 2025, Plaintiff filed a brief requesting judgment on the pleadings. (Docket No. 13).  The Commissioner interposed a brief in opposition to the request and requesting judgment on the pleadings, on November 21, 2025. (Docket No. 18).  On December 5, 2025, Plaintiff submitted a reply brief in further support of her request. (Docket No. 19).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  Second, she contends that the ALJ erred in evaluating her mental impairments.  The Court will address each argument in turn.

A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Dr. Padmaja Kandula, Plaintiff's treating neurologist, completed three medical assessments.

In November of 2021, Dr. Kandula opined that Plaintiff could not return to work, was unable to drive for at least a year, should avoid fatigue, should not ascend heights or use power tools, and needed to demonstrate good compliance with medication and lack of seizures for a period of 12 months before resuming her past employment as a flight attendant. (T at 349-51).  Dr. Kandula made the same findings in September of 2022 (T at 487-89) and May of 2023. (T at 555).

The ALJ found Dr. Kandula's opinions persuasive, noting the physician's specialty (neurology) and finding his assessments generally consistent with the treatment record. (T at 18).  Notably, however, the ALJ deemed the portions of Dr. Kandula's reports addressing "disability, periods of incapacity, recovering sufficiently to return to work, [and] the resumption of work" vague and unpersuasive. (T at 18).

Plaintiff argues that the ALJ erred by failing to expressly address, and give persuasive weight to, Dr. Kandula's conclusion that Plaintiff needed to avoid fatigue.

The Court finds no reversible error in the ALJ's assessment of Dr. Kandula's opinions.  Here's why.

First, the ALJ's decision is supported by other medical evidence of record.  Dr. Julia Kaci performed a consultative neurologic examination in January of 2023.  She diagnosed epilepsy and hypertension and opined that Plaintiff should avoid driving and operating machinery due to her history of seizures.  (T at 532-34).  Two non-examining State Agency review physicians, Dr. Li and Dr. Ng, concluded that Plaintiff could perform the full range of work at all exertional levels. (T at 65-66, 72-74).

The ALJ found the assessments of Dr. Kaci, Dr. Li, and Dr. Ng persuasive and incorporated the restrictions noted by Dr. Kaci, along with

postural and environmental limitations identified by Dr. Ng, into the RFC determination. (T at 18). *See Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020)("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record.")(citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019)("'[S]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'") (quoting *Leach ex rel. Murray v. Barnhart*, No. 02 Civ.3561 RWS, 2004 WL 99935, at \*9 (S.D.N.Y. Jan. 22, 2004)).

Second, the ALJ's assessment of Dr. Kandula's opinions, and overall RFC determination, is supported by a detailed discussion and reasonable reading of the record. (T at 15-18). Clinical examinations generally revealed normal findings, including appropriate orientation, coordination, gait, concentration, attention span, deep tendon reflexes, and bilateral upper extremity muscle strength. (T at 323-24, 511, 514-15, 522, 526, 589-90).

Third, the ALJ considered Plaintiff's activities of daily living, which included personal care, some household chores, socializing, and managing money. (T at 17, 225-35, 553). *See Santana v. Saul*, No. 18 CIV. 10870

11

(PED), 2019 WL 6119011, at *8 (S.D.N.Y. Nov. 18, 2019)(collecting cases recognizing ALJ's ability to discount assessment as inconsistent with claimant's activities); *see also Dorta v. Saul*, No. 19CV2215JGKRWL, 2020 WL 6269833, at *6 (S.D.N.Y. Oct. 26, 2020).

"Substantial evidence is "a very deferential standard of review — even more so than the 'clearly erroneous' standard." *Brault v. SSA*, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008)(citation and internal quotation marks omitted).

Indeed, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Id.* (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is

susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted).

Here, although the ALJ might have addressed more explicitly Dr. Kandula's references to Plaintiff's need to avoid fatigue, the ALJ's overall conclusion that Plaintiff retained the RFC to perform a range of work, with some non-exertional limitations, is supported by the assessments of three other physicians (none of whom identified fatigue as a work-related limitation), by a reasonable reading of the treatment record, and by appropriate consideration of Plaintiff's activities of daily living.  This is sufficient under the deferential standard of review applicable here.

### B.    Mental Functioning

The Commissioner uses a "special technique" to evaluate the severity of mental impairments at step two of the sequential analysis. *See* 20 C.F.R. § 404.1520a(a).  The ALJ rates the degree of functional limitation resulting from the claimant's mental impairment(s) to determine whether the impairment(s) is/are "severe." *See id*. at § 404.1520a(d)(1).  To perform this analysis, the ALJ considers the degree of limitation in four (4) broad functional areas – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  If the limitation in these domains is no more

than "mild," and if the evidence does not otherwise indication more than a mild limitation in the claimant's activity to perform basic work activities, then the mental impairment(s) will be considered non-severe. *See id.*

"An ALJ's decision at step two that an impairment is not severe must be 'supported by 'substantial evidence' in the record as a whole.'" *Garcia v. Comm'r of Soc. Sec.*, No. 20CIV7539PAESLC, 2022 WL 1051134, at *15 (S.D.N.Y. Jan. 31, 2022)(citations omitted).  However, "[i]t is the claimant's burden to show at step two that she has a severe impairment." *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). "A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe." *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *2–3 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

Here, the ALJ recognized Plaintiff's anxiety disorder as a medically determinable impairment but found that it did not cause more than a minimal limitation in her ability to meet the mental demands of basic work activity and was therefore not a severe impairment within the meaning of the Social Security Act. (T at 13).

The ALJ's determination was supported by substantial evidence. Although the record includes an anxiety diagnosis (T at 527), the ALJ noted that the record reflects one hospitalization related to alcohol intoxication, but no psychiatric hospitalizations and generally unremarkable mental status findings, along with the ability to attend to activities of daily living. (T at 13-14, 225-35, 526-27, 533, 553).

Moreover, the representative occupations identified by the vocational expert and adopted by the ALJ at step five of the sequential evaluation (laboratory equipment cleaner, launderer, and kitchen helper/dishwasher) are all considered unskilled jobs. (T at 19).

As such, even if Plaintiff's anxiety caused somewhat more than mild impairment in her ability to meet the mental demands of basic work activity, there is no evidence in the record to show that Plaintiff could not perform unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations. Although there was some conflicting medical evidence, the ALJ's determination that Petitioner could perform her previous unskilled work was well supported."); *Martinez v. Comm'r of Soc. Sec.*, No. 13-CIV-159-KMK-JCM, 2016 WL 6885181, at *14

(S.D.N.Y. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016)("[S]uch limitations in concentration, dealing with stress, and socialization have been found to be consistent with an RFC for unskilled work."); *Lee W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-008-DB, 2021 WL 1600294 at *6 (W.D.N.Y. Apr. 23, 2021) ("As such, unskilled work, by definition, already accounts for limitations in mental functioning, including limitations interacting with others and learning new tasks.").

Plaintiff contends that the ALJ should have developed the record by obtaining an assessment of the impact of anxiety and fatigue on her ability to meet the mental demands of basic work activity.

However, "an ALJ is not required to attempt to obtain additional evidence to fill *any* gap in the medical evidence; rather an ALJ is required to do so only where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly." *Francisco v. Comm'r of Soc. Sec.*, No. 13CV1486 TPG DF, 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11, 2015)(emphasis in original); *see also Sampson v. Saul*, No. 19CIV6270PAESN, 2020 WL 6130568, at *6 (S.D.N.Y. Oct. 16, 2020).

Here, the record contains extensive treatment notes and multiple medical opinions – none of which evidence cause for concluding that Plaintiff has disabling mental limitations.  The ALJ, therefore, adequately developed the record and a remand is not required.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's request for judgment on the pleadings is DENIED; the Commissioner's request for judgment on the pleadings is GRANTED; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: January 23, 2026                       s/ Gary R. Jones
                                                          GARY R. JONES
                                                          United States Magistrate Judge

17